# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SZYMAS LECHOSLAW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | 07-40017-FDS |
| | ) | |
| BANK OF AMERICA, N.A; BANK HANDLOWY W WARSZAWIE SA; and FLEET BANK, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT

**SAYLOR, J.**

This is an action arising out of the sale, and ultimate loss, of an official bank check. Plaintiff Szymas Lechoslaw contends that defendant Bank of America improperly sold him such a check, which he intended to use to fund a construction project in Poland, and then lost it.[1] Specifically, Lechoslaw brings claims for (1) negligence in the sale of the check, (2) breach of contract in the sale of the check, (3) negligence in the processing of the check, (4) breach of contract generally, (5) breach of the implied covenant of good faith and fair dealing, (6) infliction of emotional distress, (7) misrepresentation, and (8) violation of Mass. Gen. Laws ch. 93A.

The parties have filed cross-motions for summary judgment.[2] For the reasons stated

---

[1] During this action, Bank of America acquired Fleet National Bank, the original defendant. For the sake of simplicity, the Court will refer to the entity as "Bank of America."

[2] Defendant has also filed a motion to strike portions of plaintiff's affidavit, statement of facts, and expert reports. That motion is the subject of a separate memorandum and order.

below, plaintiff's motion for summary judgment will be denied, and defendant's motion for summary judgment will be granted in part and denied in part.

**I.     Background**

The following facts are undisputed unless otherwise noted.

**A.     Purchase and Processing of the Official Check**

Plaintiff Syzmas Lechoslaw is a citizen of the United States who resides in Worcester, Massachusetts. His primary language is Polish, although he can speak and understand simple English terms.

In the 1990's, Lechoslaw began construction of a hotel and restaurant in Poznan, Poland. At some point during the construction process, and prior to July 2000, Lechoslaw applied to the European Cooperative Bank ("ECB") to secure a loan to complete construction of the hotel. ECB agreed to finance the completion of the complex if it was 20% complete by December 2000.[3]

On July 28, 2000, Lechoslaw visited a Bank of America ("BOA") branch in Worcester. He went there for the purpose of sending money to Poland. The parties agree that when Lechoslaw entered the bank, he had no pre-existing expectation concerning the exact method by which funds would be transferred.

Lechoslaw met with Adam Glass, a BOA customer service representative. He told Glass that he wished to send money to PKO, a bank in Poland. Lechoslaw did not tell Glass or any other BOA employee the purpose for which he wished to transfer the money.

---

[3] Defendant has moved to strike evidence predating July 2000 as irrelevant. *See* Pl. Statement of Facts ¶¶ 4-19. Defendant does not appear, however, to dispute the facts that plaintiff was constructing a hotel and restaurant in Poland and made arrangements to finance that construction.

Lechoslaw contends that Glass told him that the "best" way to send money to Poland would be for Lechoslaw to purchase an official check.[4]  Glass also allegedly told Lechoslaw that he would be able to cash the check anywhere in the world "without a problem."[5]

Glass did not inform Lechoslaw that if an official check is lost, it would take an additional thirty days to track and process it.[6]  At no point did either Glass or Lechoslaw mention the possibility of sending money via international wire transfer.[7]

Ultimately, Lechoslaw purchased an official check in the amount of $31,787.34, with himself as the payee.  On July 31, 2000, he traveled to Poland with the check.  He presented it to Bank Handlowy on October 2, 2000, more than two months later.  Lechoslaw contends that he presented the check at this time because he needed the money within the next week or two.

Lechoslaw contends that after presentment, Bank Handlowy sent the check to BOA by registered mail, using the Polish postal system.  Either the check never arrived, or it arrived and was lost; BOA does not concede that it received it.

On October 10, Lechoslaw noticed that the money had not yet been deposited in his account and contacted the manager of Bank Handlowy.  He contends that on that date, the

---

[4] An official check is similar to a cashier's check, although it is not drawn by a bank upon itself.

[5] BOA disputes these contentions, and asserts that Glass "thought he understood" that Lechoslaw wanted to purchase a bank check, and therefore suggested purchasing one.  BOA also contends that Glass does not recall discussing the time frame involved in the clearing of an official check.

[6] Glass had been trained by BOA in the sale of official checks.  He was told in training that it took four to six weeks for funds to become available when an official check is deposited in a foreign bank.

[7] Lechoslaw had used BOA to send money to Poland via international wire transfer at some point in 1999. In July 2000, however, Lechoslaw did not have an account at PKO (or any other Polish bank) into which he could wire transfer funds.

manager contacted BOA to voice Lechoslaw's concerns.[8]

Lechoslaw contends that on December 1, 2000, the project's general contractor informed him that it was terminating their contract due to a failure to provide required materials and failure to pay.

On December 4, Bank Handlowy contacted a BOA representative named Josephine Parolisi. Parolisi determined that BOA had no record of receiving the check from Bank Handlowy, and that it was still outstanding with Bank One Colorado (the drawee).[9] Parolisi informed Bank Handlowy of those facts on that same day.

On December 19, Parolisi again informed Bank Handlowy that the check was apparently lost in transit and remained outstanding in Bank One Colorado's records. On December 21, Bank Handlowy sent BOA an indemnified photocopy of the check by facsimile.[10]

On December 31, ECB notified Lechoslaw that it would not lend him the funds necessary for the completion of the project. Lechoslaw contends that the reason given for ECB's denial was the failure to meet the "20% complete" requirement.

On January 9, the indemnified photocopy of the check arrived in BOA's Adjustments Department and was placed in line to be processed for payment. On February 2, BOA representative Mary Brybag informed Bank Handlowy that BOA had initiated a $31,787.34

---

[8] BOA disputes this contention, and asserts that Bank Handlowy's first attempt to contact it occurred on December 4, 2000.

[9] BOA apparently contracted out its official check functions to Integrated Payment Systems, Inc., which issued the check from an account at Bank One Colorado. That fact does not appear to have any bearing on the issues presented in this motion.

[10] This consisted of photocopies of both the front and the back of the check, as well as a signed letter from Bank Handlowy that stated "we take full responsibility in case the original check is cashed by not authorised person."

payment to Citibank New York in favor of Bank Handlowy. In early February 2001—five months after he presented it—Bank Handlowy paid Lechoslaw the full face value of the check.

Lechoslaw contends that after he lost financing from ECB, he was unable to secure funds from any other source. He also contends that because construction was suspended, the project was "practically destroyed" during the winter of 2001—the structure was covered in mold and fungi, skylights were stolen, and electrical items were ruined. He also asserts that his physical and mental health rapidly deteriorated, and that he subsequently became suicidal.

Lechoslaw alleges that he suffered the following damages: (1) the loss of $700,000 in anticipated appreciation in the value of the hotel, (2) costs to repair the damage to the hotel in the amount of $1.1 million, (3) lost profits of more than $4.4 million as of August 2007, and (4) medical and emotional damages.

### B. Procedural History

Lechoslaw filed this action in Worcester Superior Court on October 1, 2003, against BOA, Bank Handlowy, and Citibank. Bank Handlowy and Citibank were dismissed from the case by the Superior Court in December 2004. BOA moved for summary judgment as to all counts; on November 18, 2005, the Superior Court denied the motion for summary judgment as to Counts 3, 4, 5, 6, and 7, without addressing Counts 1, 2, and 8.[11] BOA then removed the case to this Court on January 18, 2007.[12] BOA has now moved for summary judgment as to all claims.

---

[11] BOA's motion for reconsideration (which requested that the court issue a written decision as to Counts 1, 2, and 8) was denied without comment.

[12] BOA removed the case pursuant to 12 U.S.C. § 632, which states: "all suits of a civil nature at common law or equity to which any corporation organized under the laws of the United States shall be a party, arising out of transaction involving international or foreign banking . . . shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits; and any defendant in any such suit may, at any time before the trial thereof, remove such suits from a State court into

## II.     Analysis

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant . . . would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

As noted, BOA moved for, and was denied, summary judgment as to Counts 3, 4, 5, 6, and 7 before the case was removed to this Court. By statute, "injunctions, orders, and other proceedings had in such [state] action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. § 1450. Interlocutory state court orders thus "are transformed by operation of 28 U.S.C. § 1450 into orders of the federal district court to which the action is removed." *Louisiana v. Guidry*, 489 F.3d 692, 698 (7th Cir. 2007) (citing *Nissho-Issai American Corp. v. Kline*, 845 F.2d 1300, 1304 (5th Cir. 1988)); *see also Munsey v. Testworth Laboratories*, 227 F.2d 902, 903 (6th Cir. 1955).

Accordingly, the Court will treat defendant's motion for summary judgment as to those counts as a motion for reconsideration. *See, e.g., Nissho-Issai*, 845 F.2d at 1304 ("[the state court's ruling]  . . . remains subject to reconsideration just as it had been prior to removal"). As to Counts 1, 2, and 8, it appears that the Superior Court did not consider the issue, and therefore the Court will simply apply the summary judgment standard set forth in Fed. R. Civ. P. 56.

---

the district court of the United States for the proper district . . . ."

The Court's analysis will begin with the motion for reconsideration.

### A.     Whether the Decision of the Superior Court Should Be Reconsidered

To be entitled to relief on a motion for reconsideration, the moving party must "demonstrate either that newly discovered evidence (not previously available) has come to light or that the rendering court committed a manifest error of law." *Palmer v. Champion Mortgage*, 465 F.3d 24, 30 (1st Cir. 2006).  Defendant contends that the Superior Court committed the following manifest errors of law:  (1) it relied upon an affidavit not made with personal knowledge, (2) it determined that the presumption of delivery applies to a letter originating internationally, (3) it determined that plaintiff made the required showing to receive the benefit of the presumption, and (4) it improperly took judicial notice of the alleged reliability of the Polish mail system.  *See Lechoslaw v. Fleet Nat. Bank*, 20 Mass. L. Rptr. 382, 2005 WL 3722419 *1, *1-3 (Mass. Super. 2005).

The Superior Court's memorandum of decision first notes that BOA "moves for partial summary judgment on counts [3, 4, 5, 6, and 7] of the Amended Complaint," and then recounts the facts of the case.  *Id.* at *1-2.  Without elaboration, it then states that "on the record before the court, [BOA] is entitled to summary judgment unless there is evidence from which a jury would be warranted in finding that [BOA] received Lechoslaw's check."  *Id.* at *2.

The court began its analysis by noting the presumption that the mailing, postage prepaid of a properly addressed letter is *prima facie* evidence of its receipt by the addressee.  *See Anderson v. Billerica*, 309 Mass. 516, 518 (1941).  It then proceeded to examine whether that presumption applied internationally.  *Lechoslaw* at *2.  The court examined the only apparent precedent in

Massachusetts, *Oliver v. Newburyport Ins. Co.*, 3 Mass. 37 (1807), which held that it did not.[13] It concluded that "the case at bar presents this court with an entirely different set of circumstances," noting that "in contrast to nineteenth-century Antigua [from which the letter in *Oliver* was mailed], twenty-first-century Poland is an industrialized and highly centralized nation." *Id.* It then determined that the presumption of receipt applied. *See Lechoslaw* at *3 ("For those reasons, and most crucially, because [Bank Handlowy] mailed the check by registered mail to a proper address through a state postal system offering a routine service, the presumption of delivery applies"). The Court then denied summary judgment as to all five counts. *Id.*

The Court does not find that the Superior Court's second and fourth determinations were manifest errors of law. The Superior Court made a reasoned decision on a relatively unexplored and unsettled issue, having only scant and ancient authority to aid it. Even if this Court were to disagree—and it expresses no opinion on that question—such disagreement alone does not amount to a finding of manifest error. Similarly, the Superior Court's general statement that "Poland is an industrialized and highly centralized nation" is not so far outside the ambit of appropriate judicial notice that the Court is prepared to declare it manifestly erroneous.

The Superior Court's first and third determinations require separate discussion. Even assuming that the presumption of delivery implies internationally, plaintiff is entitled to the presumption only when he can demonstrate that the letter was actually mailed and properly addressed (with postage prepaid). *See, e.g., Huntley v. Whittier*, 105 Mass. 391, 392 (1870); *Schneider v. Boston Elevated Ry. Co.*, 259 Mass. 564, 566 (1927); *Commonwealth v. Barboza*,

---

[13] At least one other American authority has held that the presumption does not apply internationally. *See Florea & Co. v. United States*, 24 Cust. Ct. 57 (1950).

68 Mass. App. Ct. 180, 185 (2007). To make that showing, plaintiff submitted the affidavit of Sunil Sreenivasan, the manager of Bank Handlowy. Sreenivasan asserted that "Under my direction and supervision, various Bank Handlowy employees gathered documents and information relating to the matters alleged in the plaintiff's complaint. I make this affidavit based upon the facts and information revealed to me and to Bank Handlowy employees during its investigation into the plaintiff's claims against it." (Sreenivasan Aff., ¶ 1). He then asserts that after the bank received the check from Mr. Lechoslaw, it forwarded the check for collection via Polish registered mail to for BOA at 10 Exchange Place, Jersey City, New Jersey, 07302. *(Id.* at ¶ 2). Although the Superior Court does not mention this affidavit specifically, it assumes throughout the opinion that the letter was actually and validly sent. *See Lechoslaw*, 2005 WL 3722419 at *3.

Defendant contends that the Sreenivasan affidavit does not comply with Fed. R. Civ. P. 56(e), which requires that affidavits in support of summary judgment "shall be made with personal knowledge [and] shall set forth such facts as would be admissible in evidence." The affidavit is arguably ambiguous as to whether Sreenivasan had such personal knowledge; it states that the investigation was conducted under his "direction and supervision," and that facts were "revealed" to him and other employees during the bank's investigation. The affidavit, however, is not the only evidence on point. Attached to the complaint are a number of exhibits, one of which is a copy of a SWIFT message from Bank Handlowy stating the following: "We have sent above check for collection on October 9 and still did not receive payment for it. Check was sent by

registered mail to follow[ing] address: 10 Exchange Place, Jersey City, NJ 07302 USA."[14] Taken together, the affidavit and the attachments to the complaint constitute sufficient evidence of mailing to trigger the presumption of delivery.[15] Accordingly, the Superior Court's conclusion that plaintiff was entitled to the presumption is not manifestly erroneous.[16]

That does not, however, end the inquiry. The Superior Court's assertion that the application of the presumption of delivery compelled wholesale denial of summary judgment as to Counts 3 through 7 was, in fact, clearly incorrect. Counts 3 through 7 comprise separate and distinct claims, each with unique elements. While the application of the presumption might aid plaintiff in proving some elements of some counts, it does not automatically mandate denial of summary judgment in its entirety. For example, Count 7 alleges misrepresentation in the sale of the check; whether or not BOA later received and lost the check does not appear to be relevant to the analysis of that claim. The Court will therefore consider all seven counts according to the Rule 56 standard, although it will not reconsider the Superior Court's conclusion as to the applicability of the presumption of delivery.

    **B.**    **Whether Summary Judgment Is Appropriate**

        **1.**    **Negligence (Counts 1 and 3)**

Count 1 alleges negligence in the sale of the check. Specifically, it alleges that "[defendant] breached its duty to Mr. Lechoslaw by dissuading him from completing a wire

---

[14] SWIFT is a network through which financial institutions can send and receive secure communications.

[15] Although the message does not indicate that the letter was sent "postage prepaid," it is a reasonable inference that a person sending a letter by registered mail paid the postage in advance.

[16] The presumption may, of course, be rebutted by competent evidence.

10

transfer and in persuading him to purchase the check . . . [and] as a direct result of [defendant's] negligence the plaintiff has incurred a great financial loss." Am. Complt., ¶¶ 26-27. Count 3 alleges a "neglect and failure to properly process the check" that caused plaintiff to incur "great financial loss." *Id.*, ¶ 31.

The complaint, and plaintiff's subsequent pleadings, seem to characterize the issue of one of common-law negligence – that is, an injury to person or property arising out of a failure to exercise ordinary care. In Massachusetts, purely economic losses are not recoverable in a negligence action in the absence of personal injury or property damage. *See, e.g., FMR Corp. v. Boston Edison Co.*, 415 Mass. 393, 395 (1993); *Bay State-Spray & Provincetown Steamship, Inc., v. Caterpillar Tractor Co.*, 404 Mass. 103, 107 (1989). Summary judgment is therefore appropriate to the extent plaintiff asserts common-law negligence resulting in economic loss. *See, e.g., Lewis v. General Elec. Co.,* 37 F. Supp. 2d 55, 59 (D. Mass. 1999); *Garweth Corp. v. Boston Edison Co.*, 415 Mass. 303, 304 (1993).

However—and although he does not specifically raise the issue—plaintiff does appear to have a right of action against BOA under the Uniform Commercial Code for failure to exercise ordinary care in the handling of the check. *See* Mass. Gen. Laws ch. 106 § 4-202; *Gossels v. Fleet National Bank*, 69 Mass. App. Ct. 797, 803-804 (2007); *see also* Mass. Gen. Laws ch. 106, § 1-203 (imposing obligation of good faith). Section 4-202 states in part as follows:

(a)  A collecting bank must exercise ordinary care in:

(1)  presenting an item or sending it for presentment; . . .

(4)  notifying its transferor of any loss or delay in transit within a reasonable time after discovery thereof.

> (b) A collecting bank exercises ordinary care under subsection (a) by taking proper action before its midnight deadline following receipt of an item, notice, or settlement. Taking proper action within a reasonably longer time may constitute the exercise of ordinary care, but the bank has the burden of establishing timeliness.
>
> (c) Subject to clause (1) of subsection (a), a bank is not liable for the insolvency, neglect, misconduct, mistake, or default of another bank or person or for loss or destruction of an item in the possession of others or in transit.

Here, BOA (a collecting bank) arguably failed to exercise ordinary care in the presentment of the check in violation of § 4-202. Thus, Count 3—interpreted as a claim under the UCC, rather than as a straight negligence claim—can withstand summary judgment. Count 1, however, which only alleges negligence in the sale of the check, cannot.[17]

Accordingly, summary judgment will be granted defendant as to Count 1, and denied as to Count 3, to the extent it asserts a claim under the Uniform Commercial Code. Plaintiff's motion for summary judgment as to Count 3 will also be denied.[18]

### 2. **Breach of Contract (Counts 2 and 4)**

---

[17] Plaintiff also asserts claims for negligent misrepresentation and (apparently) negligent infliction of emotional distress, which are addressed below. To the extent that Counts 1 and 3 are duplicative of those counts, they will be deemed to be merged with them. *See Islam v. Option One Mortg. Corp.*, 432 F. Supp. 2d 181, 194 n. 15 (D. Mass. 2006) (remarking that because emotional distress was the only legally cognizable injury arising from plaintiff's general negligence claim, that claim should be merged with plaintiff's separate claim for negligent infliction of emotional distress).

[18] It should also be noted that the UCC contains a provision that may preclude recovery of certain damages claimed by plaintiff:

> The measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount that could not have been realized by the exercise of ordinary care. If there is bad faith it includes any other damages, [*sic*] the party suffered as a proximate consequence.

Mass. Gen. Laws ch. 106, § 4-103; *see also* Mass. Gen. Laws ch. 106 § 4-103, UNIFORM COMMERCIAL CODE COMMENT 6 ("Finally, if bad faith is established the rule opens to allow the recovery of other damages, whose 'proximateness' is to be tested by the ordinary rules applied in comparable cases"). Plaintiff's claim for substantial consequential damages as to Count 3 thus depends, at a minimum, on his ability to prove bad faith on the part of BOA.

Count 2 alleges breach of contract in the sale of the check—specifically, that "[t]he conduct of [BOA] in dissuading the Plaintiff from completing a wire transfer and in persuading him to purchase the Check constitutes a breach of its contractual obligations to the Plaintiff . . . ." Count 4 simply alleges that "[t]he conduct of [BOA] constitutes a breach of its contractual obligations to the Plaintiff."

Count 2 is somewhat illogical. To the extent that there was a contract between plaintiff and BOA, it arose when plaintiff purchased a product (the official check) for consideration (the amount of the check plus whatever fee was charged by the bank). That contract could not have been breached when Glass allegedly gave improper advice concerning the propriety and merits of such a check; that colloquy took place *before* the purchase of the check. Even fully crediting plaintiff's version of the conversation, no breach of contract could have occurred during those discussions.

Even assuming that a contract was created when the check was purchased, it is unclear how BOA breached it. Plaintiff points to no language, written or otherwise, imposing any contractual obligations between the parties concerning the presentment of the check. Plaintiff seems to suggest that the bank implicitly contracted to exercise ordinary care in the handling of the check, and to process it in a reasonable amount of time. To the extent that the bank had such obligations, they arose pursuant to the Uniform Commercial Code, not the provisions of any contract. *See Gossels*, 69 Mass. App. Ct. at 802 ("In most cases, breach of a duty of care [in the handling of a check] is a tort, and not a breach of contract").[19]

---

[19] BOA contends that the obligations of the parties as to the international collection of a check are governed by the Uniform Rules for Collections ("URC"). It is undisputed that Bank Handlowy sent an "Instruction Letter" to BOA requesting that it assist in the collection of the check, and that the letter was stamped with the

Accordingly, summary judgment will be granted in favor of BOA, and against plaintiff, as to Counts 2 and 4.

### 3. Implied Covenant of Good Faith and Fair Dealing (Count 5)

Every contract "is subject to an implied covenant of good faith and fair dealing." *Christiansen v. Kingston School Committee*, 360 F. Supp. 2d 212, 226 (D. Mass. 2005) (citing *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 473 (1991)). The covenant provides that "neither party shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." *Anthony's Pier Four*, 411 Mass. at 471-472.

A breach of the covenant requires "conduct taken in bad faith either to deprive a party of the fruits of labor already substantially earned or unfair leveraging of the contract terms to secure undue economic advantage." *Blue Hills Office Park LLC v. J.P. Morgan Chase Bank*, 477 F. Supp. 2d 366, 374-375 (D. Mass. 2007) (quoting *Christiansen*, 360 F. Supp. 2d at 226)). Even drawing all reasonable inferences in favor of the plaintiff, there is no evidence in the case that points to any attempt (in bad faith or not) to deprive plaintiff of his funds or to secure an undue economic advantage over him. Defendant's motion for summary judgment will therefore be granted as to Count 5, and plaintiff's cross-motion will be denied.

### 4. Infliction of Emotional Distress (Count 6)

Count 6 alleges a claim for infliction of emotional distress. Plaintiff does not specify

---

language "Subject to Uniform Rules for Collection (1995 Version) International Chamber of Commerce, Publication No. 522." The URC, however, does not have the force of law, but is binding only on those institutions that voluntarily agree to adhere to its provisions. Its terms therefore cannot bind plaintiff, who is not a party to any agreement concerning the URC.

14

whether his claim is for intentional or negligent infliction of emotional distress. The Court will consider the claim as the latter, as that the requirements of the former clearly have not been met. *See, e.g., Johnson v. Town of Nantucket*, 550 F. Supp. 2d 179, 183 (D. Mass. 2008) (to prevail on an intentional infliction claim, plaintiff must prove that "(1) the defendant intended to inflict emotional distress, or knew or should have known that emotional distress would likely result, (2) the defendant's conduct was "extreme and outrageous" to the extent that it was "utterly intolerable in a civilized society, (3) the defendant's conduct caused the plaintiff's distress, and (4) the plaintiff sustained severe emotional distress").

To prevail on a claim of negligent infliction of emotional distress, the plaintiff must prove "(1) negligence, (2) emotional distress, (3) causation, (4), objective evidence of physical manifestation of mental distress, and that (5) a reasonable person would have suffered emotional distress under the circumstances of the case." *See, e.g., Sullivan v. Boston Gas Co.*, 414 Mass. 129, 132, 137-138 (1993).

As to the first element, the Court notes that the bank did not have any actionable duty to plaintiff beyond the duties imposed by the UCC. Generally, a bank's relationship to its customers "is simply one of creditor and debtor . . . an arms-length, business relationship." *Islam*, 432 F. Supp. 2d at 195 (quoting *Adams Co-operative Bank v. Greenberg (In Re Greenberg)*, 212 B.R. 422, 428 (Bkrtcy. D. Mass. 1997)). No fiduciary duty is owed. *See, e.g., Pimental v. Wachovia Mortgage Corp.*, 411 F. Supp. 2d 32, 39 (D. Mass. 2006); *Superior Glass Co., Inc. v. First Bristol County Nat'l Bank*, 380 Mass. 829, 832 (1980); *see also Islam*, 432 F. Supp. 2d at 194-198 (declining to grant defendant summary judgment on the basis of a lack of an actionable banker-customer duty in negligence, and concluding that the defendant should certify the question

to the Supreme Judicial Court).

Even assuming that defendant had a duty of good faith and reasonable care under the UCC, plaintiff has failed to present "objective evidence of physical manifestation of mental distress." *Sullivan*, 414 Mass. at 137-138.

In his affidavit, plaintiff contends that "I was suicidal when I heard of the loan denial . . . My health deteriorated . . . I had a psychological breakdown . . . I sought medical care in Poznan for my depression. My physician in Poland, who has a speciality [*sic*] in psychiatry, informed me that my depression was caused by the issues arising from the sale and processing of the check." He also contends his physician sent him to a sanatorium for three weeks.[20]

The only other evidence in the record supporting these assertions consists of similar statements from his deposition. Plaintiff has provided no medical records, physician affidavits, or other corroborating evidence. In order to survive summary judgment, "a plaintiff must *corroborate* his claims of mental distress with sufficient objective evidence of harm." *Godette*, 490 F. Supp. 2d at 81, 82 (emphasis added); *Pasquale v. Reading Mun. Light Dep't*, 18 Mass. L. Rptr. 370, 2004 WL 2345080 *1, *6 (Mass. Super. 2004); *Papasodero v. Thayer & Assoc.*, 14 Mass. L. Rptr. 684, 2002 WL 1555319 *1, *7 (Mass. Super. 2002); *compare Sullivan*, 414 Mass. at 140 & n.11 (reversing grant of summary judgment to defendant when ailments detailed with specificity and expert medical opinion linked symptoms to the incident in dispute). Plaintiff here has offered *no* objective evidence of harm, and indeed has offered only vague descriptions of his

---

[20] The scope of physical harm required to sustain a negligent infliction claim has "expanded to a range of symptoms that may provide the type of objective evidence to prove physical harm [including] symptoms that could be classified as more 'mental' than 'physical.'" *Godette v. Stanley*, 490 F. Supp. 2d 72, 81 (D. Mass. 2007) (citing *Gutierrez v. Mass. Bay Transp. Auth.*, 437 Mass. 396, 412 (2002)).

symptoms. The lack of even a single supporting piece of medical evidence in the record mandates summary judgment for defendants. *See, e.g., Godette*, 490 F. Supp. 2d at 82-83.[21]

Defendant's motion for summary judgment as to Count 6 will accordingly be granted, and plaintiff's motion as to Count 6 will be denied.

### 5. Negligent Misrepresentation (Count 7)

Plaintiff contends that defendant represented that "the check was a superior method of transferring funds to Poland," and that defendant is accordingly liable for negligent misrepresentation.[22] A defendant is liable for negligent misrepresentation if "in the course of [its] business, [it] supplies false information for the guidance of others in their business transactions, causing and resulting in pecuniary loss to others by their justifiable reliance on the information, with failure to exercise reasonable care or competence in obtaining or communicating the information." *Marram v. Kobrick Offshore Fund, Ltd.*, 442 Mass. 43, 59 n.25 (2004).[23] Statements by a bank employee in connection with the sale of an official check could, under some circumstances, support a claim for negligent misrepresentation. *See Gossels*, 69 Mass. App. Ct. at 805-06.

---

[21] It is true that no specific type or quantity of evidence is required in order for a negligent infliction claim to survive summary judgment. *See Rodriguez v. Cambridge Hous. Auth.*, 443 Mass. 697, 702 (2005) ("While expert medical testimony might be needed to make this [objective evidence of harm] showing, it is not mandatory"). Whatever the bar for sufficiency under that standard may be, however, plaintiff has fallen well short of it.

[22] Plaintiff labels Count 7 as a "misrepresentation" claim, without specifying whether he contends an intentional or negligent misrepresentation claim. *See* Am. Complt. at ¶ 41-45. As the complaint does not allege that defendant's representative "knowingly" made a false statement, the Court will consider Count 7 to be a claim for negligent misrepresentation. *See, e.g., Macoviak v. Chase Home Mortgage Corp.*, 40 Mass. App. Ct. 755, 760 (1996) (intentional misrepresentation exists when a defendant knowingly makes a false statement of material fact for the purpose of inducing the plaintiff to act, and the plaintiff relies on the false statement to his detriment).

[23] A claim for negligent misrepresentation is not subject to the economic loss rule. *See, e.g., Nota Constr. Corp. v. Keyes Assoc.*, 45 Mass. App. Ct. 15, 20 (1998).

Here, if Glass did indeed represent to plaintiff that an official check was the "best" way to transfer funds, and that it could be cashed "anywhere in the world without a problem," then that information was arguably misleading or false (given the existence of the undisputedly faster or more reliable methods, such as wire transfer). Whether plaintiff justifiably relied on that advice also presents a material issue of disputed fact. Both motions for summary judgment as to Count 7 will therefore be denied.

### 6. <u>Violation of Chapter 93A (Count 8)</u>

Finally, plaintiff contends that defendant's acts and omissions over the course of the sale and processing of the check were willful and knowing violations of Mass. Gen. Laws ch. 93A.[24] Mass. Gen. Laws ch. 93A, § 11, states in part:

> No action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair . . . or deceptive act and practice occurred primarily and substantially within the commonwealth. For the purposes of this paragraph, the burden of proof shall be upon the person claiming that such transactions and actions did not occur primarily and substantially within the commonwealth.

The first issue is whether the transaction at issue occurred "primarily and substantially" within Massachusetts, which requires that the Court ascertain the "center of gravity of the circumstances that give rise to the claim." *Kuwaiti Danish Computer Co. v. Digital Equipment Corp.*, 438 Mass. 459, 473 (2003). Here, plaintiff's complaint is in large part centered on the circumstances surrounding the sale of the check—in particular, the bank's alleged statement that an official check was the "best" way to transfer funds and that plaintiff would be able to obtain the

---

[24] Plaintiff does not specify whether the claim was brought under Mass. Gen. Laws ch. 93A § 9 or ch. 93A § 11. Plaintiff does, however, allege that defendant "was engaged in a [*sic*] trade of [*sic*] commerce within the Commonwealth of Massachusetts." Am. Complt., ¶ 47. As this tracks the statutory language of § 11, the Court will consider the claim as brought under that section.

18

funds "without a problem" forms the essential basis of his chapter 93A claim. That statement, and plaintiff's alleged reliance, occurred in Massachusetts. The mishandling of the check appears to have occurred in either Poland, Colorado, or New Jersey, and the damage occurred largely in Poland. Although the matter is not free from doubt, the Court finds that the claim meets the "primarily and substantially" requirement of § 11.

The question then becomes whether there is sufficient evidence of a substantive violation to sustain a claim under chapter 93A. A "mere breach of a commercial obligation," without more, does not amount to a violation of ch. 93A. *Framingham Auto Sales, Inc. v. Workers' Credit Union*, 41 Mass. App. Ct. 416, 418 (1996) (citing *Whitinsville Plaza, Inc. v. Kotseas*, 378 Mass. 85, 100-101 (1979)). Mere negligence likewise does not violate ch. 93A. *See, e.g., Govoni & Sons Constr. Co. v. Mechanics Bank*, 51 Mass. App. Ct. 35, 51 (2001).

Plaintiff notes that under 940 C.M.R. 3.16, an act or practice is a violation of Mass. Gen. Laws ch. 93A, § 2 (and therefore § 11) if:

> Any person or other legal entity subject to this act fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction . . . .

The First Circuit has determined that non-disclosure of a material fact under this regulation can be a violation of chapter 93A, even in the absence of any duty to disclose. *See V.S.H. Realty, Inc. v. Texaco, Inc.*, 757 F.2d 411, 416-417 (1st Cir. 1985); *Gossels*, 69 Mass. App. Ct. at 812 ("A negligent misrepresentation of a fact the truth of which is reasonably capable of ascertainment is an unfair and deceptive act or practice within the meaning of c. 93A, § 2(a)").

It is undisputed that plaintiff did not ask about the relative or absolute speed of different methods of transferring funds. He did not mention the purpose for which he was transferring

19

funds or his need for quick access to the funds (which might have, arguably, signaled to the bank representative that a different method of transfer might be preferred). But if plaintiff's version of the conversation is credited for summary judgment purposes, then defendant's representative affirmatively told plaintiff that an official check was the "best" way to transfer funds, and that he would be able to cash it anywhere in the world "without a problem." Arguably, this alleged statement could have convinced plaintiff that there was no better or faster alternative for transferring funds, and may have dissuaded him from asking about other methods. Conversely, if defendant's version of the conversation is credited, then its representative did not make any statements about the merits of the check method. Summary judgment for either party is therefore inappropriate as to Count 8.

## IV. Conclusion

For the foregoing reasons, plaintiff's motion for summary judgment is DENIED. Defendant's motion for summary judgment is GRANTED as to Counts 1, 2, 4, 5, and 6, and DENIED as to Counts 3, 7, and 8.

**So Ordered.**

          /s/ F. Dennis Saylor  
          F. Dennis Saylor IV  
          United States District Judge

Dated: September 8, 2008